UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MALEEHA QAZI, *et al*, § § Plaintiffs, § VS. § § STAGE STORES, INC. D/B/A PEEBLES, § INC.; dba GOODY'S AND SPECIALITY § RETAILERS, INC.; dba STAGE; dba § BEALLS AND SPECIALITY § RETAILERS, INC., § § Defendants. § | CIVIL ACTION NO. 4:18-CV-0780 |

## MEMORANDUM AND ORDER

Before the Court is Defendants' Motion to Compel Arbitration. (Doc. No. 98). After considering the Motion and all applicable law, and because Defendants have sought the benefits of a litigation strategy, the Court determines that Defendants' Motion to Compel Arbitration must be **DENIED**.

## I. BACKGROUND

This case is a consolidated Fair Labor Standards Act (FLSA) action, brought as a putative collective action, for failure to pay overtime wages. Named Plaintiffs Maleeha Qazi and Amy Ackley were store managers at stores owned and operated by Defendant Stage Stores, Inc., which does business under the brands Peebles, Stage, Bealls, Palais Royal, and Goody's, and Defendant Specialty Realters, Inc., a wholly owned subsidiary to Defendant Stage Stores (collectively, "Defendants").[1] (Doc. No. 19, at 2–3; Doc. No. 57). On March 12, 2018, Plaintiffs Qazi and

---

[1] The Original Complaint only named Defendant Stage Stores; Defendant Specialty Realters was added later through stipulation as the properly named party. (Doc. No. 57). The fact that Defendant Specialty Realters was added at a later date does not impact any of the issues discussed in the

1

Ackley brought the present suit against Defendants as a collective action, alleging that Defendants underpaid all similarly situated store managers for worked overtime hours by improperly classifying store managers as overtime exempt. (Doc. No. 1; Doc. No. 19, at 1–2). Plaintiffs alleged Defendants violated the FLSA, as well as various New York and Ohio wage and hour laws. (Doc. No. 19, at 17–24).

On June 15, 2018, the Court held a hearing on whether discovery should be bifurcated. (Doc. No. 38). Plaintiffs argued that initial discovery should be limited to the issue of conditional certification only, and discovery on the merits should not take place until after certification and notice were decided. Defendants, however, wanted all discovery to take place immediately. The Court accepted Defendants' arguments for broader gauge discovery and allowed it to proceed without bifurcation. (Minute Entry 6/15/2018).

On August 3, 2018, Plaintiffs filed their first Motion to Certify Class. (Doc. No. 42). Since then, there have been many rounds of briefing and hearings on the issue of conditional certification and notice. Parties also engaged in discovery during this time, exchanging thousands of pages of documents and conducting four depositions, and appeared before this Court to resolve discovery disputes. Throughout all briefings and appearances before this Court, Defendants had represented that there were sixteen putative collective members who had signed arbitration agreements under Defendants' 2017 Alternative Dispute Resolution (ADR) program, and that those individuals were thus bound to arbitrate their claims on an individual basis. (Doc. No. 97, at 10). While other putative collective members were subject to earlier iterations of Defendants' ADR programs, including one that began in 2004, Defendants never represented that individuals subject to those

---

following Order. Thus, the Court will not distinguish the two when discussing the procedural history of this case.

earlier ADR programs would be barred from receiving notice. *Id.* Because Defendants only raised this argument as to sixteen individuals, Plaintiffs chose not to challenge the validity of the 2017 ADR agreement and agreed to exclude those sixteen people from the conditional collective. *Id.* The Court issued its ruling on Plaintiffs' Motion to Certify on June 18, 2019. (Doc. No. 86). The Court ordered that the collective be conditionally certified and that notice be sent to a "collective of all current and former Store Managers . . . employed by Defendant[s] . . . nationwide at any time from October 18, 2013 through present." *Id.* at 5. The Court also noted in its order that Defendants represented that sixteen members had arbitration agreements, *id.* at 2, and under Fifth Circuit precedent, "[n]otice should . . . be distributed only to individuals who are not subject to arbitration agreements," *id.* at 5.

On July 25, 2019, Defendants filed a Motion for Clarification. (Doc. No. 87). Defendants argued that a new Supreme Court decision, *Lamps Plus v. Varela*, 139 S. Ct. 1407 (2019), which was issued on April 24, 2019, required the Court to clarify how its conditional certification order applied to putative collective members who were subject to arbitration agreements that did not contain explicit waivers of class or collective action rights. *Id.* at 1. For the first time, Defendants represented to this Court that individuals subject to the 2004 ADR program were also bound to arbitrate their claims, and thus, could not receive notice as part of the collective. (Doc. No. 88, at 9–10). According to Plaintiffs, about 95% of the putative collective members had signed a 2004 ADR agreement. (Doc. No. 97, at 10, 11 n.3). Thus, if Defendants were able to exclude notice for those subject to the 2004 ADR agreement as well, the pool of putative collective members receiving notice would shrink from about 2,022 individuals to 99 individuals. *Id.* at 11 n.3.

On July 29, 2019, parties filed a Joint Motion for Stay. (Doc. No. 89). Three other similar cases had been filed in the Southern District against Defendants and were pending before this

3

Court. Following the Court's order on conditional certification in *Qazi*, all parties from all four cases agreed to stay their respective cases in order to engage in mediation. *Id.* at 3. On November 1, 2019, parties filed a Joint Status Report, alerting the Court that mediation had not been successful. (Doc. No. 92, at 3). The parties requested that the Court continue the stay, except as to briefing on Defendants' Motion for Clarification, until that Motion had been decided. *Id.* at 4. The parties also requested that the Court consolidate all four related cases. *Id.* The Court granted both requests. (Doc. No. 94).

Plaintiffs filed their Response to Defendants' Motion for Clarification on December 23, 2019. (Doc. No. 97). Defendants filed their Reply, as well as a Motion to Compel Individual Arbitration against all named Plaintiffs on January 6, 2020. (Doc. No. 98; Doc. No. 100).[2] At the time that Defendants filed their Motion to Compel Arbitration, almost 22 months had passed since the case had begun. According to Plaintiff, prodigious amounts of discovery have been generated and produced in that intervening time—53 interrogatories, 138 requests for production, 32,000 pages of discovery, four depositions, and an additional 24,000 pages of discovery from third party discovery. (Doc. No. 104, at 11).

The Court held a hearing on all outstanding motions on February 28, 2020. The hearing focused on notification of putative collective members who had signed the 2004 ADR agreement and issues of waiver. The Court clarified its conditional certification order in response to Defendants' Motion for Clarification, stating that the order excluded only the sixteen individuals who were subject to the 2017 ADR agreement from notice. (Minute Entry 2/28/2020). It also heard

---

[2] After briefing was completed on Defendants' Motion to Compel Arbitration, Plaintiffs filed a Motion to Strike Defendants' Motion to Compel Arbitration. (Doc. No. 109). Plaintiffs argued that Defendants filed their Motion to Compel Arbitration in violation of the joint stay. The Court denied Plaintiffs' Motion to Strike at the last hearing. (Minute Entry 2/28/2020).

4

argument on Defendants' Motion to Compel Arbitration and took the motion under advisement. The Court now turns to Defendants' pending Motion to Compel Arbitration.

## II. LEGAL STANDARD

In order to compel arbitration, the Court must determine that (1) the parties entered into a valid, enforceable arbitration agreement and (2) the claim at issue is covered by that arbitration agreement. *See Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). However, where there is a purported delegation clause, which would delegate certain gateway arbitrability decisions to the arbitrator, rather than the Court, the Court's inquiry changes slightly. The Court still asks the first question—whether a valid arbitration agreement exists—but then turns to a different second question—whether the purported delegation clause in fact "evinces an intent to have the arbitrator decide whether a given claim must be arbitrated." *See id*. at 202 (citing *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010)). Where there is a valid delegation clause, "the motion to compel arbitration should be granted in almost all cases." *Id.*

Parties to a binding arbitration agreement may waive their right to arbitrate, although waiver is a finding that is disfavored by courts. *Forby v. One Techs., L.P.*, 909 F.3d 780, 783 (5th Cir. 2018). A party waives its right to arbitrate through a litigation-conduct waiver if it "(1) substantially invokes the judicial process and (2) thereby causes detriment or prejudice to the other party." *Id.* (quotations omitted). In order to substantially invoke the judicial process, a party must "engage in some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration." *Id.* at 784 (quoting *In re Mirant Corp.*, 613 F.3d 584, 589 (5th Cir. 2010)). To show prejudice, a party must demonstrate "delay, expense, or damage to a party's legal position that occurs when the party's opponent forces it to litigate an issue and later seeks to

arbitrate that same issue." *Id.* at 785 (quoting *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 346 (5th Cir. 2004)).

## III. ANALYSIS

### 1. *Enforceability of Arbitration Agreement and Delegation Clause*

The Court turns first to the question of whether a valid arbitration agreement exists between those Plaintiffs subject to the 2004 ADR agreement and Defendants. This first step of the Court's inquiry is only a determination of whether there is an agreement "to arbitrate any set of claims." *Kubala*, 830 F.3d at 202. This does not require close contract interpretation; rather, the focus is only on contract formation. *Id.* The question of whether parties have entered into a valid arbitration contract turns on state contract law—here, Texas law. *Id.* Employment arbitration agreements are "broadly enforceable in Texas." *Id.* at 202–03 (citing *In re Poly-Am., L.P.*, 262 S.W.3d 337, 348 (Tex. 2008)).

On its face, the 2004 ADR agreement appears to have been properly formed. However, Plaintiffs raise a number of arguments for why it is not. First, they argue that because the agreement allows Defendants, but not employees, to bring certain equitable relief claims in court, the agreement lacks consideration. (Doc. No. 104, at 31). However, mismatched terms in a contract do not automatically equate to lack of consideration. In fact, there are also certain employee-specific claims that are exempted from the agreement, such as ERISA claims or unemployment or workers' compensation claims. (Doc. No. 99-2, at 38). Arbitration agreements in which parties retain the right to judicial review in certain circumstances are not automatically unconscionable. *See Carson v. Higbee Co.*, 149 F. App'x 289, 294–95 (5th Cir. 2005). Thus, it is also not enough for Plaintiffs to argue that certain types of claims are not bound by the agreement. Second, Plaintiffs argue that, because the agreement states that it does not prevent application of company

policies and procedures to employees, the contract lacks consideration. (Doc. No. 104, at 31). It is unclear how this proves lack of consideration. The agreement merely states that the company may continue applying its internal policies, such as those that prevent harassment and retaliation, while internal discussions relating to a filed claim are ongoing. (Doc. No. 108, at 6). Again, a contract that treats the parties differently in some terms does not automatically lack consideration.

Third, Plaintiffs note that the agreement gives Defendants the right to change or terminate the agreement at any time, which they argue makes the agreement illusory. (Doc. No. 104, at 31–32). Plaintiffs omit a key phrase when they quoted from the agreement, however: Defendants may change or terminate the agreement *with 14 days' notice*. (Doc. No. 99-2, at 49). Additionally, such change or termination only applies prospectively; any claim that has already been filed before the change takes effect is unaffected by the change. *Id.* Texas law states that arbitration agreements that include provisions which allow unilateral modification or termination are not illusory if they require notice and apply only prospectively. *See J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 230 (Tex. 2003) (citing *In re Halliburton Co.*, 80 S.W.3d 566, 568–69 (Tex. 2002)); *see also Lizalde v. Vista Quality Markets*, 746 F.3d 222, 226 (5th Cir. 2014). Because the 2004 ADR agreement allows for unilateral modification or termination only after 14 days' notice and only to prospective claims, this agreement is not illusory.

Fourth, Plaintiffs also argue that continued employment pursuant to an at-will employment relationship is not sufficient consideration for formation of an arbitration contract. (Doc. No. 104, at 31). However, cases that make this assertion also state that mutual promises to arbitrate all employment claims, in which both parties are bound, do create sufficient consideration. *See J.M. Davidson*, 128 S.W.3d at 228 (citing *Halliburton*, 80 S.W.3d at 569); *Magdaleno v. PCM Const. Servs., LLC*, No. H-12-2862, 2014 WL 1760942, at *7 (S.D. Tex. May 1, 2014). Because this

7

agreement binds both parties to arbitrate employment disputes, there is sufficient consideration outside of employees' at-will employment.

Finally, Plaintiffs also offer a number of reasons why the 2004 ADR agreement is unconscionable. Most require an exaggerated reading of the contract; the plain language of the contract does not rise to the level of unconscionability. Only two arguments are colorable. First, Plaintiffs note that there is no mechanism to opt-out of the agreement. (Doc. No. 104, at 33). However, as discussed *supra*, arbitration agreements can be made contingent upon continued employment in an at-will employment relationship. *See Halliburton*, 80 S.W.3d at 572 ("[A]n employer may make . . . a 'take it or leave it' offer to its at-will employees."). Second, Plaintiffs argue that the agreement insists on confidentiality in violation of FLSA. (Doc. No. 104, at 33). However, the Fifth Circuit allows for arbitrations to be kept confidential. *See Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 175–76 (5th Cir. 2004). Thus, all of Plaintiffs' unconscionability arguments fail. Plaintiffs have not shown how the 2004 ADR agreement is an invalid contract.[3]

---

[3] Plaintiffs also argue that Defendants have failed to prove the existence of arbitration agreements binding certain individuals, including named Plaintiff Qazi. (Doc. No. 104, at 12–13). Defendants concede that they cannot locate copies of signed acknowledgments for some individuals hired between 2004 and 2014. (Doc. No. 99, at 13 & n.2). However, under Fifth Circuit law, this does not mean that the 2004 ADR agreement is not still binding on these employees; rather, the Fifth Circuit has held that a party who is able to provide an affidavit establishing that the signed agreements could not be located and that the party requires all individuals in such a situation to sign the same agreement would not need to produce the signed documents unless the opposing party was able to contradict that affidavit. *See Banks v. Mitsubishi Motors Credit of Am. Inc.*, 156 F. App'x 710, 711 (5th Cir. 2005). Here, Defendants have provided declarations that assert that every new employee was given a copy of the 2004 ADR agreement and that accepting the agreement was a mandatory condition of employment. Because Plaintiffs have not refuted these statements, Defendants do not need to provide signed copies of the agreements in order to maintain arbitration claims against all individuals who were subject to the 2004 ADR agreement.

Because there is a valid arbitration agreement here, the Court reaches the second prong of the delegation clause test: whether there is a valid delegation clause. Defendants note that, according to the agreement, "any controversy or claim arising out of or relating to the interpretation or enforceability of any provision of this Program or any Dispute Resolution Acknowledgment form that references this Program" is subject to mediation and arbitration. (Doc. No. 99, at 16). The Court finds this delegation clause to be valid, as its intent to delegate certain gateway issues to an arbitrator is clear. However, even though this delegation clause is valid, this determination does not end the present inquiry. Rather, Plaintiffs have argued that Defendants have waived their right to arbitration. Because there is also a potential issue of waiver, the Court must determine whether the delegation clause at issue intended to delegate the question of waiver to the arbitrator as well.

A valid delegation clause does not automatically delegate all arbitrability decisions to an arbitrator. Even where arbitration agreements divest courts of power, courts have still been able to determine "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)). The Fifth Circuit and its lower courts have considered this specific type of waiver, referred to as "litigation-conduct waivers," to be external legal constraints, and, thus, are issues that are presumptively for the courts to decide. *See Vine v. PLS Fin. Servs., Inc.*, 689 F. App'x 800, 803–04 (5th Cir. 2017); *Tellez v. Madrigal*, 292 F. Supp. 3d 749, 754–56 (W.D. Tex. 2017) (applying *Vine*); *Fozard v. C.R. England, Inc.*, 243 F. Supp. 3d 789, 795–96 (N.D. Tex. 2017) (considering question of waiver through invocation of judicial process as an external legal constraint that would foreclose arbitration after deciding that delegation clause is enforceable); *see also Vine*, 689 F. App'x at 803

(noting five other circuits have found litigation-conduct waiver to be issue that courts presumptively decide; only one held, without analysis, that arbitrator should decide). This is because such waivers implicate "courts' authority to control *judicial* procedures or to resolve issues . . . arising from *judicial conduct*," and thus, parties would expect *courts* to decide such issues. *Vine*, 689 F. App'x at 803 (emphasis and alteration in original) (quoting *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 219 (3d Cir. 2007)). Such a presumption accords with policy considerations as well—where waiver depends on conduct of parties before the court, that court is "in the best position" to decide whether waiver occurred. *Id.* at 802 (quoting *Tristar Fin. Ins. Agency, Inc. v. Equicredit Corp. of Am.*, 97 F. App'x 462, 464 (5th Cir. 2004)).

The presumption that courts decide the issue of litigation-conduct waiver may be displaced if the delegation clause contains "clear and unmistakable evidence" of the parties' intent to arbitrate this issue specifically. *Id.* at 803 (quoting *Ehleiter*, 482 F.3d at 221). The 2004 ADR agreement does not contain such clear and unmistakable evidence; indeed, it does not mention waiver at all. The arbitration agreement in *Vine* is analogous. There, the agreement required arbitration of "any claim or attempt to set aside this Arbitration Provision," but never mentioned litigation-conduct waiver. *Id.* at 804. The Fifth Circuit held that this delegation clause did not contain "clear and unmistakable evidence" of parties' intent to arbitrate litigation-conduct waiver. *Id.* at 803–04 ("[W]e cannot interpret the Agreement's silence regarding who decides the waiver issue here as giving the arbitrators that power for doing so . . . [would] force [an] unwilling part[y] to arbitrate a matter he reasonably would have thought a judge, not an arbitrator, would decide." *Id.* at 804 (quotations omitted) (alterations in original)); *see also Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1417 (2019) ("Although parties are free to authorize arbitrators to resolve [gateway] questions, we will not conclude that they have done so based on silence or ambiguity in their

agreement, because doing so might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide." (quotations omitted)). Similarly, there is no evidence that parties to the 2004 ADR agreement intended to have the issue of litigation-conduct waiver decided by an arbitrator. Thus, the Court retains power to decide whether Defendants have waived their right to arbitration through their actions before this Court.

2. *Waiver of Right to Arbitration*

The Court now turns to the question of whether Defendants have indeed waived their right to arbitration by invoking the judicial process. A party waives its right to arbitration if it "(1) substantially invokes the judicial process and (2) thereby causes detriment or prejudice to the other party." *Forby v. One Techs., L.P.*, 909 F.3d 780, 783 (5th Cir. 2018) (quotations omitted). In order to substantially invoke the judicial process, a party "must, at the very least, engage in some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration." *Id.* at 784 (quoting *In re Mirant Corp.*, 613 F.3d 584, 589 (5th Cir. 1999)). Although the Fifth Circuit has avoided issuing a bright-line rule, *Mirant*, 613 F.3d at 589, it has held that "a party waives arbitration by seeking a decision on the merits before attempting to arbitrate," *Forby*, 909 F.3d at 784. Accordingly, most cases in the Fifth Circuit, and most of the cases that Plaintiffs rely on in their Response brief, are those in which the party seeking arbitration has already filed a dispositive motion in their litigation. *See, e.g.*, *Forby*, 909 F.3d at 784; *Janvey v. Alguire*, 847 F.3d 231, 243 n.11 (5th Cir. 2017); *Mirant*, 613 F.3d at 589; *Electrostim Med. Servs., Inc. v. Health Care Serv. Corp.*, No. H-11-2745, 2012 WL 5373462, at *7 (S.D. Tex. Oct. 30, 2012). However, there are also a few cases in which courts have found substantial invocation of the judicial process where no dispositive motions have been filed. *See, e.g.*, *Petroleum Pipe Ams. Corp. v. Jindal Saw, Ltd.*, 575 F.3d 476, 481–82 (5th Cir. 2009) (finding that, although the court had made no legally

binding rulings before party filed motion to compel arbitration, court had given "very strong indications" at hearing that it would rule against party); *Republic Ins. Co. v. PAICO Receivables LLC*, 383 F.3d 341, 344–45 (5th Cir. 2004) (noting "extensive litigation activities," which did not include dispositive motions, and ultimately finding substantial invocation of judicial process based on opposition to a motion for protective order, in which party argued that all issues were properly before the court); Magdaleno v. PCM Const. Servs., LLC, No. H-12-2862, 2014 WL 1760942, at *8 (S.D. Tex. May 1, 2014) (finding invocation of judicial process even where "litigation activity was not as extensive as . . . in certain other [Fifth Circuit] cases"—defendant answered the lawsuit, participated in scheduling and case management conferences, requested bifurcated discovery, provided names and addresses for notice, joined in agreed motions to extend deadlines, participated in mediation, and answered discovery). Thus, dispositive motions are certainly not necessary in order to find that a party has substantially invoked the judicial process.

Defendants in this case have substantially invoked the judicial process. This case has been ongoing since March 12, 2018. There are currently 110 entries on the docket for the lead consolidated case. From the onset of the case, Defendants have urged—and prevailed upon—a wider scope of discovery than that sought by Plaintiffs. Defendants have filed answers to both the original and the amended complaints, filed a joint discovery/case management plan, filed three responses to Plaintiffs' Motion to Certify Class (in which they only briefly mentioned arbitration agreements, and only as to the sixteen individuals who had signed the 2017 ADR agreement), filed a joint extension of time and a joint protective order, appeared before this Court to argue on Plaintiffs' Motion for Conditional Certification, participated in mediation, and engaged in extensive discovery (according to Plaintiffs, the case has generated over 32,000 pages of discovery, 24,000 pages of third-party discovery, and four depositions so far). Although

Defendants have not filed a dispositive motion, they indicated at the hearing on bifurcated discovery that they intended for the Court to adjudicate the merits of the case. (Doc. No. 38). Plaintiffs attempted to limit discovery to only the issue of conditional certification; Defendants opposed and requested full discovery on both conditional certification and the merits. Defendants argued, on the record, "[W]e don't want to be prohibited from moving for summary judgment in a case and conducting discovery on the merits of the claims . . . . [W]hat we see this as is an attempt to prohibit us from moving on the merits of the claim in order to get conditional certification out on an early onset." *Id.* at 8. Defendants continued, representing that they were "fully prepared to have discovery on all of the issues [Plaintiff's counsel] mentioned, good faith, merits, the whole— the whole list." *Id.* at 9. By successfully arguing against bifurcation of discovery, then, Defendants indicated that they intended to litigate the merits before the Court. By further engaging in extensive discovery and filing numerous briefs and exhibits, Defendants have substantially invoked the judicial process.

Of additional note is that Defendants never moved to compel arbitration until *after* the Court had ruled against them on conditional certification. In *In re Mirant Corp.*, the Fifth Circuit observed that the defendant did not present its motion to compel arbitration as an alternative to its motion to dismiss, instead waiting until after the court had partially denied its motion to dismiss before filing its motion to compel arbitration. 613 F.3d at 590. Because the defendant was fully aware of its right to compel arbitration from the beginning of the lawsuit, the Fifth Circuit admonished the defendant for its delayed filing, writing:

> We are not convinced that [the defendant], having learned that the district court was not receptive to its arguments, should be allowed a second bite at the apple through arbitration. To hold otherwise would encourage litigants to delay moving to compel arbitration until they could ascertain how the case was going in federal district court. In essence, [the defendant] attempted to play "heads I win, tails you lose,"

13

>which is the worst possible reason for failing to move for arbitration sooner than it
>did.

*Id.* (quotations and citations omitted); *see also Jindal Saw*, 575 F.3d at 482 (finding that party moving for arbitration was improperly seeking "second bite at the apple" by filing after court indicated it was very likely to rule against moving party, but before order was issued). Similarly, Defendants do not deny that they were fully aware of the 2004 ADR agreements well before they filed their Motion to Compel Arbitration. And yet, they did not even *mention* enforcing those agreements until after the Court had already ruled against them on conditional certification. Thus, taken with the numerous filings and appearances that Defendants have entered with this Court, Defendants have substantially invoked the judicial process.

The second prong on the question of litigation-conduct waiver is the question of prejudice. The party opposing arbitration carries the burden of demonstrating prejudice. *Forby*, 909 F.3d at 784. To show prejudice, a party must demonstrate "delay, expense, or damage to a party's legal position that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue." *Id.* (quoting *Republic Ins. Co.*, 383 F.3d at 346). While delay in asserting arbitration alone is not enough to constitute prejudice, it is one factor to consider. *Id.* at 785. Here, Plaintiffs were prejudiced by Defendants' actions. Defendants have undoubtedly delayed in compelling arbitration. Although Defendants argue that they raised an affirmative defense regarding arbitration in their Answer (Doc. No. 99, at 17), the Fifth Circuit has held that this, and even reserving the right in a motion to dismiss, do not make delayed demands for arbitration timely, *Mirant*, 613 F.3d at 591. Defendants also argue that they have produced copies of their 2004 ADR agreement. (Doc. No. 99, at 17). However, arbitration must be invoked by a party; production of the agreement proves only that Defendants have been aware of such an agreement since early in the litigation. Because of Defendants' unnecessary delay, this case has been ongoing

for almost two years. In that time, Plaintiffs' counsel allege they have incurred over $600,000 in attorneys' fees and costs. (Doc. No. 104, at 20 n.9). Allowing so much time to pass in such an active litigation has also wasted judicial resources. *See Mirant*, 613 F.3d at 592. Plaintiffs have suffered prejudice in the form of lost time, spent costs, and wasted judicial resources because of Defendants' delay. Thus, Defendants have waived their right to arbitration through litigation-conduct waiver.

Defendants argue that, even if their delay in asserting their rights to arbitration would normally result in waiver of those claims, they actually have not delayed in filing their Motion to Compel Arbitration because the U.S. Supreme Court's decision in *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407 (2019), issued on April 24, 2019, created a change in law that altered Defendants' understanding of their rights to demand individual arbitration. Previously, the Supreme Court had held in *Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.*, 559 U.S. 662 (2010), that a court may not compel class arbitration unless there is a contractual basis for concluding that the parties had agreed to do so. *Id.* at 684. Silence, then, precludes class arbitration. *See id.* In *Lamps Plus*, the Supreme Court clarified that courts also "may not infer from an ambiguous agreement that parties have consented to arbitrate on a classwide basis." 139 S. Ct. at 1419. After *Lamps Plus*, "[n]either silence nor ambiguity provides a sufficient basis for concluding that parties to an arbitration agreement agreed to undermine the central benefits of arbitration itself." *Id.* at 1417.

Defendants claim that the 2004 ADR agreement is ambiguous as to whether class arbitration is allowed. Thus, Defendants argue that, prior to *Lamps Plus*, they believed that the 2004 ADR agreement's ambiguity required them to arbitrate on a class-wide basis. Now, Defendants claim that *Lamps Plus* has clarified their right to compel individual arbitration, and therefore, they, for the first time, have seriously considered invoking their right to arbitrate. (Doc.

No. 99, at 26–28). Plaintiffs argue that *Lamps Plus* has not created any new rights, because it merely extended the reasoning of *Stolt-Nielsen*. (Doc. No. 104, at 22–25).

Defendants certainly could have invoked their right to arbitrate under the 2004 ADR agreement before *Lamps Plus*, which would have barred issuance of notice to those individuals under the Fifth Circuit's decision in *In re JPMorgan*. However, Defendants do raise a strong argument that *Lamps Plus* changed their calculus for whether to compel arbitration, given their apparent preference for individual arbitration. The 2004 ADR agreement is similar enough to the language that the *Lamps Plus* Court later found to be ambiguous as to whether it required class arbitration. Meanwhile, although the Fifth Circuit indicated a strong presumption against class arbitration in the absence of clear language, it was not entirely clear prior to *Lamps Plus* as to whether that ambiguous language would have required class arbitration.[4] This lack of clarity prior to *Lamps Plus* does not necessarily mean that *Lamps Plus* created new law. However, the Court finds that it does not need to decide whether *Lamps Plus* created new law or merely applied existing law.

Regardless of whether *Lamps Plus* created new law, Defendants' argument does not "save" their right to arbitrate from waiver. This is because, even after *Lamps Plus* was decided,

---

[4] Prior to *Lamps Plus*, the Fifth Circuit emphasized the Supreme Court's distaste for class arbitration and implied a heavy presumption against it. *See Reed v. Fl. Metro. Univ., Inc.*, 681 F.3d 630, 640 (5th Cir. 2012) ("[A]n arbitrator (or court) should not conclude that parties . . . consented to such a proceeding absent a contractual basis for doing so. Although the agreement to submit to class arbitration may be implicit, it should not be lightly inferred."), *abrogated by Oxford Health Plans LLC v. Sutter*, 569 U.S. 564 (2013). The Fifth Circuit found that the arbitrator had exceeded his authority in ordering class arbitration when the arbitration agreement did not discuss class arbitration. *Id.* at 642. However, given that the plaintiff admitted during arbitration that the parties had not discussed class arbitration, thus implying silence, that the posture of the case was one in which the Fifth Circuit was reviewing the decision of an arbitrator, and that the Supreme Court had abrogated the opinion for applying the standard of review incorrectly, it is possible that this case did not provide clear enough precedent to establish the law of this circuit before *Lamps Plus* was decided.

Defendants continued to invoke the judicial process. *Lamps Plus* was decided on April 24, 2019, only 13 days after both parties had filed opposing supplemental memoranda following argument on Plaintiffs' Motion for Conditional Certification. (Doc. No. 80; Doc. No. 82). The Court decided Plaintiffs' Motion for Conditional Certification on June 18, 2019. (Doc. No. 86). Defendants never filed anything in the interim. They then waited until July 25, 2019 before filing their Motion for Clarification. (Doc. No. 87). They did not file a Motion to Compel Arbitration until February 10, 2020.[5] (Doc. No. 98). Thus, Defendants waited almost two months after *Lamps Plus* was decided—and until after this Court had ruled against them—before filing anything that even mentioned their interest in arbitrating claims under the 2004 ADR agreement. Even when they did file something, they styled their motion as a Motion for Clarification, thus seeking clarification of the Court's decision on the merits of certification, rather than contending that this suit could no longer go forward because all claims were now individually arbitrable. Given that Defendants now allege that *all* named Plaintiffs were subject to 2004 ADR agreements and that this case should therefore be dismissed, Defendants' choice to continue with this litigation, rather than to compel arbitration from all named Plaintiffs and opt-in Plaintiffs immediately and end the suit, evinced a desire to continue this litigation. Thus, Defendants have still waived their right to arbitration, even after *Lamps Plus* was decided.[6]

---

[5] This was after a stay was entered on July 30, 2019, in order to allow parties to attempt mediation. (Doc. No. 91). Mediation was unsuccessful, and parties began moving forward in this case again on October 31, 2019. (Doc. No. 92). The stay has technically been in place since July 30, 2019, other than as to briefing relating to Defendants' Motion for Clarification. (Doc. No. 94). However, Defendants argue in their Response to Plaintiffs' Motion to Strike that it was within their power to file a Motion to Compel Arbitration at any point, regardless of the stay. (Doc. No. 111, at 7). Thus, the time during which the case was stayed for mediation (three months, from August through October 2019), should not count against Defendants, but Defendants still delayed over three months after mediation failed before filing their Motion to Compel Arbitration.

[6] Defendants cannot profess unawareness or delayed awareness of the Supreme Court's decision. The day after *Lamps Plus* was decided, Defendants' law firm published a newsletter to the firm's

Because Defendants have waived their right to arbitration under their 2004 ADR agreements with named Plaintiffs and putative collective members through their invocation of the judicial process in this litigation, they cannot now compel arbitration. The Court must deny Defendants' Motion to Compel Arbitration.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' Motion to Compel Arbitration.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the 17th day of March, 2020.

_____
HON. KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

---

clients on the firm's website, describing the Supreme Court decision and the advantages to clients in Defendants' position. *See* Kaitlyn Burke & Rob Friedman, *Supreme Court Confirms Class Arbitration May Not Proceed Unless Expressly Permitted by the Arbitration Agreement*, Littler (Apr. 25, 2019), https://www.littler.com/publication-press/publication/supreme-court-confirms-class-arbitration-may-not-proceed-unless ("[E]mployers should preserve their rights in moving to compel arbitration on an individualized basis at the first chance.")